[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Kitchens of Bedford, Inc. (hereinafter called Bedford), has initiated an application for a restraining order CT Page 6466 injunction against both defendants (hereinafter called Schultheis and Benson respectively).
The court finds the following facts. Anthony P. Guillaro testified that he owned the plaintiff corporation engaged in the business of designing kitchens, installing and sale of kitchen cabinets, and the construction and remodeling of kitchens in New York and Connecticut. From April, 1996, up to March, 1997, he employed the defendant Schultheis as a design person whose duties included meeting the customer, inquiring of the customer's needs, preparing a kitchen layout, and taking orders, etc. The plaintiff's business and showroom was conducted at 11 Winkler Farm Road, Bedford, New York, a high traffic area. The plaintiff carried Woodmode kitchens. The plaintiff operated Kitchens of Bedford since October, 1995. He testified that he established a customer base through extensive advertising, including leads from the factory. There are also three other Woodmode distributors in Westchester County, New York. He does not share his customer list with other distributors. He testified that Schultheis came to him and stated he was leaving with the assurance that he would help the customers on the plaintiff's books. Schultheis had come to him a few weeks earlier and they discussed a restructure of his remuneration with an $800 draw, etc., so that he was surprised when informed he was leaving. The plaintiff corporation keeps a log of its customers and customer leads. Prior to leaving the plaintiff, three customers had given the defendant Schultheis deposits, and he had been working with other potential purchasers. Guillaro told Schultheis to wrap up these deals, and they reviewed the customer list. The plaintiff submitted, as Exhibit A, a two page master customer list. Within one or two weeks after Schultheis left, the plaintiff received word from the manufacturer that one order (Mary Lee) was being processed from this list by the defendants. Previously, she had come to the plaintiff's showroom, and Schultheis had worked with her on a kitchen layout and she had given him a $500 fee/deposit. On cross-examination, Guillaro testified that Schultheis had no written employment contract with the plaintiff. Schultheis had prior experience before coming to work for the plaintiff. The plaintiff's business covered Westchester and parts of Connecticut. Mary Lee testified that she gave a deposit of $500 for a kitchen designed by Schultheis while he was employed by the plaintiff. When she paid the $500, there was no written contract. Ultimately, she purchased a kitchen through Schultheis at the defendant's business. Schultheis testified that he was now employed by defendant Benson for two-thirds of a month, and that CT Page 6467 he had worked for the plaintiff for about one year as a kitchen designer. His duties included meeting customers at the showroom, designing kitchens as well as selling kitchens. The plaintiff specialized in Woodmode or Brookhaven kitchens. He left the plaintiff's employ prior to March 3, 1997. Prior to leaving, he had a conversation with the plaintiff's owner to contact customers and to wrap up pending deals. He stated he did contact a number of these customers, and he confirmed that Mary Lee purchased a kitchen from him while employed by defendant Benson. He stated that he told Lee he was leaving the plaintiff because she was a good friend, although he claimed he did not tell her he was going to work for Benson. He also discussed employment with Benson, while still working with the plaintiff, and that he would bring customers with him. He testified to selling a kitchen to a customer, one Pablo, who he knew while at plaintiff's employ and to contacting a number of other potential customers on the plaintiff's customer list.
Mary Lee confirmed meeting Schultheis at the plaintiff's business. He designed a kitchen for her and after Schultheis told her he was leaving, she checked around and since her sister had a kitchen done by Benson, she decided to go with Benson. She further stated that she felt comfortable with Schultheis. On cross-examination, she admitted Schultheis called her to tell her he was now with Benson.
The defendant Schultheis testified and he admitted contacting customers while with Bedford. Finally, Benson himself testified it was common practice for customers to come into his business with plans drawn up elsewhere.
"The law is well settled that knowledge acquired by an employee during his employment cannot be used for his own advantage to the injury of the employer during the employment; and after the employment has ceased the employee remains subject to a duty not to use trade secrets, or other confidential information, which he has acquired in the course of his employment, for his own benefit or that of a competitor to the detriment of his former employer." Allen Mfg. Co. v. Loika,145 Conn. 509, 514, 144 A.2d 306 (1958). The court in Allen also recited Restatement, 4 Torts 757, comment b. The following definition is given: "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may CT Page 6468 be . . . a list of customers . . . ." Id., 516. There can be no question that Schultheis used the customer list which he built up or obtained while working for the plaintiff. This information or customer list would not have been available to Benson but for the fact that he employed Schultheis who brought the list with him when he left the plaintiff's employment. Finally, the Allen case stated, at page 517: "[T]here is also a policy which is designed to protect employers against improper disclosures of information which their employees have received in confidence . . . ." This court finds that Schultheis improperly used and disclosed the plaintiff's customer list. While in Town Country House HomesService Inc. v. Evans, 150 Conn. 314, 317, 189 A.2d 390 (1963), the court there stated: "Upon termination of the agency, however, and in the absence of a restrictive agreement, the agent can properly compete with the principal in matters for which he had been employed . . . . He is not, however, entitled to solicit customers for such rival business before the end of his employment . . . in direct competition with the employer's business." (Internal quotation marks omitted.) The evidence presented in these hearings suggests a strong likelihood that Schultheis informed the plaintiff's customers, while still working for the plaintiff, that he was leaving and suggested their transfer of business to his new employer. Finally, it is the plaintiff's contention that Schultheis violated his confidential relationship with the plaintiff and after his termination utilized, with Benson's consent, the confidential list acquired in the plaintiff's employ which resulted in competition with his former employer. As stated in Triangle SheetMetal Works, Inc. v. Silver, 154 Conn. 116, 125, 222 A.2d 220
(1966), "from the very fact of entering into employment with the plaintiffs, obligated themselves to exercise the utmost good faith, loyalty and honesty toward . . . [their] principal or employer." (Internal quotation marks omitted.) For reasons stated above, this court finds that the plaintiff has satisfied its burden that it will suffer irreparable harm for which monetary damages may be inadequate and, therefore, temporarily enjoins the defendants from soliciting, receiving and using the proprietary information of the plaintiff, to wit, its customer list.
Grogins, J.